UNITED STATES DISTRICT COURT

DISTRICT OF HARRISBURG

COPY

**1 : CV01 - 1119**

BRIAN K. GARRIES,
A.K.A. PHAROAH O. NKOSI,
       PETITIONER,

                    DOCKET NO._____

V.

 DONALD ROMINE, WARDEN
UNITED STATES OF AMERICA,   :   DATE_____
        RESPONDANT.

FILED
SCRANTC

JUN 2 2 2001

PER _____
DEPUTY CLERK

### WRIT OF HABEAS CORPUS
### PURSUANT TO 28 USC §2241

      Comes now, Brian K. Garries a.k.a. Pharoah O. Nkosi, the
petitioner herein, proceeding pro se and informa pauperis in
the above captioned matter, respectfully moves this Honorable
Court to remand this case for a new appeal and or any relief
sought in this petition, or any relief deemed necessary by this
Court pursuant to any opinion rendered.   This Court has subject
matter jurisdiction pursuant to 28 USC §2241.   In support, the
petitioner represents the following:

## ISSUES PRESENTED

Argument I.    THE PETITIONER'S ORIGINAL APPELLATE ATTORNEY'S
RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
THROUGH THIER PRESENTATION OF CERTAIN PREJUDICIAL
DOCUMENTS WHICH CORROBORATED THE GOVERNMENT'S
CASE, THEREBY UNDERMINING THE PETITIONER'S
APPELLATE PROCESS. . . . . . . . . . . . . . .

Argument II.    THE PETITIONER'S REPLACEMENT APPELLATE ATTORNEY'S
RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
THROUGH THIER FAILURE TO RAISE AN INEFFECTIVE
ASSISTANCE OF COUNSEL CLAIM AGAINST THE ORIGINAL
ATTORNEY'S AND FAILED TO ARGUE THE EXCULPATORY
VALUE OF THE DESTROYED BLOOD STAIN EVIDENCE. . . .

Argument III.    THE PETITIONER'S REPLACEMENT APPELLATE ATTORNEY'S
RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL
THROUGH THIER FAILURE TO RAISE THE DESTRUCTION
OF THE BLOOD STAIN EVIDENCE ISSUE BEFORE THE
UNITED STATES SUPREME COURT. . . . . . . . . . .

## PROCEDURAL BACKGROUND

On June    , 1981 the petitioner, Brian K. Garries[hereinafter "petitioner or Garries"] was arrested and charged with the murder of Camille Garries.    Being a member of the United States Air Force, the petitioner was brought before a General Court Martial at the United States Air Force Academy in Colorado Springs, Colorado.    On or about March 3, 1983 a trial by jury commenced resulting in a guilty verdict.    On March 17, 1983 the trial Court imposed a sentence of life imprisonment along with a dishonorable discharge, forfeiture of all pay and allowances and reduction of his Military Grade.    The Convening Authority approved the petitioner's sentence. After a timely notice of appeal, the petitioner sought review of his conviction from the Air Force Court of Military Review[hereinafter "AFCMR"].    During these proceedings the petitioner was represented by Attorney Messars, William Raynard, Sander Karp, David Miller, Colonel Leo L. Sergi and Major Conrad C. Baldwin. On January 16, 1985 the AFCMR affirmed the petitioner's conviction and sentence.    The petitioner then sought appellate review from the Court of Military Appeals while being represented by new counsel, Luther C. West.    On August 20, 1986 the Court of Military Appeals affirmed the decesion of the AFCMR.    Finally, the petitioner sought review of his conviction from the United States Supreme Court while being represented by Colonel Sergi and Major Charles E. Ambrose.

## STATEMENT OF FACT

On June  , 1981 the petitioner was arrested by various members of the El Paso County Sheriff's Department.    The State of Colorado charged the petitioner with murder for the alleged killing of his wife, Camille Garries.   On June 23, 1981 the El Paso Sheriff's Department sent eight items which were presumed to contain blood stains to the Federal Bureau of Investigation Laboratory in Washington D.C. for testing. There, Roy Tubegen, a FBI blood stain analyist, tested the aforementioned  eight items and opined without any reliable certainty that three of the eight items were stained with human blood, one of which, contained Type B-Enzyme PGM 2-1. However, none of the items possessed the requisite amount of blood to permit further classification.   Tubegen failed to photograph the samples or his results for future varification of his findings.

After Tubegen tested the eight items they were sent to the defendants forensic expert, Dr. Lawrence Kier.   Dr. Kier examined each item and was not able to lacate any presence of blood.   Kier opined that Tubegen should have photographed the stains before testing and admonished his testing procedures as lacking in appropriate safeguards to permit varification of the test.   Pursuant to the FBI's destruction of these material and possibly exculpatory pieces of evidence, the State of Colorado

nolled the charge of murder against the petitioner.    The Court
held that "it is undisputed that the blood stains were both
material and potentially exculpatory."

The Military assumed juristiction of the case and charged
the petitioner with premeditated murder.    At trial, the petitioner
sought to supress the unvarified blood stain test results.    The
Military trial Court denied the motion to supress reasoning that
the State of Colorado State Court's findings were not binding on
the Government.    The petitioner pursued litigation on this issue
post-trial, presenting it before the AFCMR and the Court of Military
Appeals.    Unfortunately he recieved unfavorable ruling at both
appellate levals.    While preparing for Supreme Court review, the
petitioner requested that his attorney's continue to litigate the
destruction of blood stain evidence issue before the Supreme Court.
However, the petitioner's appellate counsel did not include the
destruction of evidence issue in his Writ before the Supreme Court.
Unsatisfied with the representation he was recieving by his post-
trial attorney's, the petitioner wrote identical letters to both
the Judge Advocate General and the Secratary of the Air Force.
See Exhibit A herewith attached.    While in the AFCMR proceedings,
the petitioner's appellate counsel submitted certain prejudicial
documents and affidavits which undermined the merits of the appeal,
in that, the said documents corroborated the governments case in
chief against him.

## ARGUMENT I.

**THE PETITIONER'S ORIGINAL APPELLATE ATTORNEY'S RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH THIER PRESENTATION OF CERTAIN PREJUDICIAL DOCUMENTS WHICH CORROBORATED THE GOVERNMENT'S CASE IN CHIEF, THEREBY UNDERMINING THE PETITIONER'S APPELLATE PROCEEDINGS. . . . . . . . . . . . .**

### STANDARD

The sixth amendment to the United States Constitution provides that in all criminal prosecutions, the accussed shall enjoy the right...to have the assistance of counsel. U.S. Const. amend. VI. The sixth amendment further provides that the right to counsel is the right to effective assistance of counsel. McMann v. Richardson, 397 U.S. 759, 771 (1970); Strickland v. Washington, 466 U.S. 668 (1984). In addition, it is well established that a criminal defendant is entitled to this effective assistance of counsel throughout all stages of the proceedings including the appellate process. United States v. Peaks, 992 F.2d 39, 41(4th Cir.1993).

Here, the petitioner proffers that his appellate attorney's[1] incorporated certain prejudicial documents during his proceedings with the Air Force Court of Military Review. Specifically, the

---

[1] Richard M. Borchers of the American Civil Liberty Union, Denver, Colorado.

petitioner contends that the post trial affidavits of Michael
J. Kirk Jr., David Scott Lee and Walter K. Moeller were so
prejudicial and inflamatory that counsel's presentation of
these documents before the AFCMR constituted ineffective
assistance of counsel.   The presentation of these documents
had no bearing and were irrelevant to all issues presented on
appeal except for the appellants request for a new trial based
on newly discovered evidence.

     First, appellate counsel erred when he offered the affidavit
of Michael J. Kirk claiming that it was some type of recantation
of the trial testimony he offered as the governments key witness.
However, it is clear from a plain reading of this affidavit, that
it is not any type of recantation, rather it's contents confirm
and corroborates the government's case in chief against the
petitioner. See Exhibit B herewith attached.   Next, appellate
counsel submitted a post trial affidavit from David Scott Lee.
The petitioner is at a loss to dicern the rational behind appellate
counsel's presentation of this affidavit.   The Lee affidavit,
like the Kirk affidavit, offered no new evidence to the AFCMR
while corroborating the government's case. See Exhibit C herewith
attached.   Finally, appellate counsel submits two affidavits
from Kent Moeller, the petitioner's post trial forensic expert.
Again, the petitioner can not explain the presentation of this
affidavit.   The two affidavits of Moeller can not be said to be

applicable to any of the issues raised by the petitioner and the findings of each affidavit are diametrically opposed to each other. See Exhibit D herewith attached.

In Strickland v. Washington, supra, the Supreme Court established a two prong test with which to evaluate ineffective assistance claims.   To prevail under the Strickland test a petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and that (2) counsel's deficient performance prejudiced the petitioner resulting in an unreliable or fundamentally unfair outcome in the proceedings. Dooley v. Petsock, 816 F.2d 885 (3rd Cir. 1987).

In this case, the petitioner can meet both requirements of the Strickland test.   The petitioner contends that appellate counsel's presentation of the affidavits fell below an objective standard of reasonableness and prejudiced the appellate process, in that, if these documents were not presented the outcome of his appeal would have been different.   The presentation of the Kirk and Lee affidavits as a recantation of Kirk's trial testimony was anything but that.   In fact, the AFCMR used the Kirk and Lee affidavits as a basis to deny the appeal.   The Court stated: "since Kirk does not recant his testimony...Lee's affidavit corroborates Kirk's claim that they 'being Michael Kirk, Brian Garries and myself David S. Lee' discussed the accused case."AFCMR opinion at 51(a). Since the petitioner's attorney's had a duty to advocate the best evidence on direct appeal, the presentation of these prejudicial

documents must be considered inexcusable.    The AFCMR quotes from each of the documents/affidavits in thier denial of the petitioner's appeal.    "The constitutional requirement of substantial equality and fair process can only be attained where counsel  acts in the role of an active advocate [proffering the best evidence] on behalf of his client. Anders v. California, 386 U.S. 738, 744 (1967).     It is clear that appellate counsel failed in his role as an advocate when he "changed the adversarial process into an inquisitorial one by joining the forces of the [government] and working against his client." Robinson v. Black, 812 F.2d 1084, 1086-87 (8th Cir. 1987). See also, Evans v. Clarke, 868 F.2d 267 (8th Cir. 1989) The Kirk, Lee and Moeller affidavits definately worked against the petitioner's best interest  and for that reasons this Court must find that counsel rendered ineffective assistance of counsel requiring a new appeal before the AFCMR.

## ARGUMENT II

### THE PETITIONER'S REPLACEMENT APPELLATE ATTORNEY'S RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH THIER FAILURE TO RAISE AN INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM AGAINST THE ORIGINAL APPELLATE ATTORNEY'S AND FAILED TO ARGUE THE EXCULPATORY VALUE OF THE DESTROYED BLOOD STAIN EVIDENCE. . . . . .

During the petitioner's Court of Military Appeals proceedings he was represented by Attorney Luther C. West, Col. Leo L. Sergi and Maj. Conrad C. Baldwin Jr. who took over the appeal when the

petitioner became unsatisified with some of the attorney's
during the AFCMR proceedings.    Specifically, he was upset
with the presentation of the affidavits which corroborated
the government's case against him and was used as a basis
to deny his appeal.    The petitioner instructed Attorney
West to seek permission from the Court of Military Appeals
to pursue an ineffective assistance of counsel claim against
the attorney's who were responsible for submitting clearly
prejudicial documents.    Attorney West stated that the
ineffective assistance claim was a viable issue and he would
argue it in his brief.    However, Attorney West failed to
include the ineffective assistance claim in his brief nor
did he argue the exculpatory value of the destroyed blood
stain evidence when arguing the denial of the supression
motion.

The conduct of the petitioner's appellate counsel during
the Court of Military Appeals proceeding falls comfortably
within the confines of <u>Strickland v. Washington</u>, <u>supra</u>.
Counsel's blatent disregard for the petitioner's wishes
clearly fell below the objective standard of reasonableness
<u>Strickland</u> speaks of.    As the Supreme Court once said in
<u>Faretta v. California</u>, 95 S.CT 2525, 2533 (1975) the accused
must have control over decisions made regarding his defense
because "it is he who suffers the consequences if the defense
fails." <u>Id</u>.    In this case, the petitioner's attorney's deprived

him of this fundamental right when they disregarded the request
to pursue the ineffective assistance claim against the original
appellate attorney's.

The ineffective assistance argument lodged against the
replacement appellate counsel is compounded when it is viewed in
addition to counsel's failure to argue effectively the exculpatory
value of the destroyed blood stain evidence.   The destruction
of evidence issue was the most viable and significant issue
this case held.   The issue was concieved in the State Court
Court proceedings where it was argued effectively resulting
in the dissolution of the State murder charges against the
petitioner.   The issue met unfriendly resistance when it made
it's way into Military Court.   The principal reason for this
was that the petitioner's Military attorney's failed to argue
the exculpatory value of the destroyed blood stain evidence in
any effective manner.

In United States v. Garries, USCMA Dkt. No. 51769AF, the
Court held that the applicable standard of review was controlled
under California v. Trombetta, 467 U.S. 479 (1984) and United States
v. Kern, 22 M.J. 49 (C.M.A. 1986), being the Military equal to
Trombetta.   There, the Court explained "the constitutional and
military due process duty to preserve evidence is limited to that
which, (1) Posses[es] an exculpatory value that was apparent before
it was destroyed; and (2) is of such a nature that the accused
would be unable to obtain comparable evidence by other reasonable

means." 467 U.S. at 489; 22 M.J. at 51.

The petitioner was unable to meet this standard because appellate counsel failed to litigate the issue correctly. First, counsel cited State law to support the argument despite the fact that the Military trial Court had previously ruled that State law was not binding with regard to the issue.    Second, counsel did not make any effective argument to proffer the exculpatory value of the destroyed evidence.    Appellate counsel should have argued the "apparent" exculpatory value of the blood stained evidence first by relying on the State Appellate Court's finding that "it is undisputed that the blood stains were both material and potentially exculpatory." $\underline{*/}$ While it may be true that Colorado State law standards are not binding upon Federal Military Courts, the State Appellate Court's finding must be viewed to hold a reasonable presumption of correctness.    Next, counsel should have known and argued the exculpatory value of the destroyed  evidence as it related to the jurisdictional componant of this Military prosecution.    The Military was able to assume jurisdiction of this case primarily because it believed that the murder of Camille Garries was committed on a Military Installation.    The petitioner was thus prevented from arguing and proving otherwise through the destruction of the blood stain evidence.    Finally, appellate counsel failed to argue the exculpatory value concerning the apparent fact that the petitioner

---

$\underline{*/}$  See <u>People v. Garries</u>, 645 P.2d 1306 (Col. 1982)

was deprived any opportunity to test the minute particles of suspected blood so as to affirmatively demonstrate the lack of blood in his home and car.   These deficiencies in appellate counsel's representation when viewed in isolation or collectively, constitutes a finding of ineffective assistance of counsel which requires a new appeal before the Air Force Court of Military Appeals.


## ARGUMENT III.


**THE PETITIONER'S REPLACEMENT APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL THROUGH THIER FAILURE TO PRESENT THE DESTRUCTION OF THE BLOOD STAINED EVIDENCE ISSUE BEFORE THE UNITED STATES SUPREME COURT. . . . . . . . . . .**


### STANDARD

It is well established under the Strickland v. Washington, standard that when counsel fails to raise obvious and significant issues without any ligitamate stratigic purpose, such conduct results in ineffective assistance of counsel. Bell v. Jarvis, 198 F.3d 432, 443 (4th Cir. 1999); Torres v. Irvin, 1998 W.L. 824527 *22.

Following affirmance by the Court of Military Appeals, the petitioner sought review by the U.S. Supreme Court.   During these

proceedings the petitioner was again represented Col. Leo L. Sergi and also Major Charles E. Ambrose.   It was in these proceedings where counsel for the petitioner abandoned the most significant and obvious issue in the case i.e., the destruction of the blood stain evidence.   Counsel presented two issues for the Supreme Court, one of which delt with the trial court's denial of a six month continuance,  and the other delt with the trial court's denial of investigator defense funds.   Counsel's decision to abandon the destruction of evidence issue in order to pursue the weaker aforementioned issues was inexcusable.   The blood stain issue was the most crucial piece of evidence regarding the prosecution of the murder of Camille Garries.   It was this issue which resulted in the dissolution of the State murder charges against the petitioner and was the sole piece of evidence which his military conviction is predicated upon.  Without it, no military prosecution would have occured and had the evidence been preserved properly, the petitioner would have been able to show his innocence.   The destruction of the blood stain evidence issue was the most significant and obvious issue the petitioner had.  Moreover, specific requests were made by the petitioner for it's presentation to the Supreme Court.

   In Mayo v. Henderson, 13 F.3d 528 (2nd Cir. 1994) the Court provided useful language for resolution of issues such as these. The Second Circuit holds "when counsel fails to brief significant and obvious issues...for no apparent reason, while pursuing issues

that were clearly and significantly weaker, the competence of counsel is called into question." 13 F.3d at 5333; accord Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986).  In Matire v. Wainwright, 811 F.2d 1430 (11th Cir. 1987) the Eleventh Circuit found ineffective assistance of counsel when appellate counsel ignored a substantial meritorious fifth amendment issue that was obvious on the record and which trial counsel had expressly objected.Id. at 1438.    Similarly, petitioner Garries destruction of evidence issue was also an obvious issue of his trial record which his trial counsel expressly objected too.

The controlling law on this type of ineffective assistance of counsel is in accord within most circuits. cf. Banks v. Reynolds, 54 F.3d 1508, 1515 (10th Cir. 1995) with Mayo v Henderson, supra,; and Mason v. Hank, 97 F.3d 887 (7th Cir. 1996) with Bell v. Jarvis, supra.   Because the destruction of blood stain evidence issue was both significant and obvious to the petitioner's counsel, and it was abandoned in pursuit of significantly weaker issues , this Court must find that attorney's Sergi and Ambrose rendered ineffective assistance of counsel unto the petitioner during his Supreme Court proceedings requiring anew opportunity to present the blood stain issue to the High Court.

## CONCLUSION

For the foregoing reasons the petitioner Brian K. Garries respectfully request that this Honorable Court grant all of the relief sought in this petition, or any relief deemed necessary by the Court.

Respectfully submitted,

20 June 2001

Brian K. Garries a.k.a.
Pharoah Nkosi 11388-045
USP Lewisburg
Po Box 1000
Lewisburg, PA 17837

ATTACHMENTS


EXHIBIT  A:LTR TO SECRETARY OF THE U.S. AIR FORCE , dated 30 Sept 1986

LTR TO JUDGE ADVOCATE GENERAL OF U.S. FORCE  dated 30 Sept 1986

REPLY LTR OF JUDGE ADVOCATE  GENERAL OF THE U.S. AIR FORCE dated 14 Oct 1986.


EXHIBIT B:  AFFIDAVIT MICHAEL J. KIRK, dated 13 June 1983


EXHIBIT C:  AFFIDAVIT DAVID S. LEE, dated 22 June 1983


EXHIBIT D:  AFFIDAVIT KENT MOELLER, dated May 1984

MEMO FOR RECORD, KENT MOELLER, dated 18 Oct 1983


UNITED STATES AIR FORCE  COURT OF MILITARY REVIEW, PETITION OF WRIT OF ERROR CORAM NOBIS, BRIEF IN SUPPORT OF PETITION AND THE COURTS DECISION dated 29 April 1994 , Misc. DKT. NO.94-03


PETITION FOR EXTRAORDINARY RELIEF(writ of error coram nobis) TO THE U.S. COURT OF MILITARY APPEALS.  BRIEF IN SUPPORT OF PETITION AND THE COURTS DECISION, dated 9 June 1994, USCMA Misc. DKT. NO. 94-8109/AF

30 Sept 1986

Brian K. Garries, #70795
Drawer A
Ft. Leavenworth, K.S. 66027-7140

To: THE Honorable Secretary of the Air Force

Please permit me to inform you of my case, U.S v. GARRIES, which is pending
review before the United States Supreme Court. I was tried and convicted by a
General Courts- Martial on 17 March 1983 under Article 118 of the Uniform
Code of Military Justice (UCMJ ). This trial was convened at the U.S. Air Force
Academy, Colorado Springs, Colorado. However; the American Civil Liberties
Union ( ACLU ) had expressed a desire to represent me on the Appellant process.

I agreed to allow the ACLU to represent me in the Appellant proceedinds because
of their reputation and they had the necessary resources available to do an
effective job to vindicate me from such a hideous crime. It is my contention,
however; that the ACLU attorney's in Denver, Colorado, Richard M. Borchers,
Sander Karp, and William Reynard deliberately did not exercise competence
during my Appellant proceedings andtheir legal ethics and integrity should be
called into question.

The reason for this valid complaint is that during their representation before the
Air Force Court of Military Review ( A.F.C.M.R. ), they produced cunningly
devised documents ( Affidavits, Memos for Record, etc. ) to undermine my chances
of a retrial or reversal and produced an apperance of guilt before the A.F.C.M.R.
to affirm and sustain my conviction.

Such collusion between the State of Colorado and these attorneys created prejudice
before the court and is in violation of my constitutional rights guaranteed under
the six th amendment. While it is true I desired ACLU representation, the documents
filed with the court implied guilt on my part. It is my contention that their
erroreous representation was so seriously flawed, that it rendered my Appellant
proceedings a farce and a mockery of justice. It was not the Appellant defense
expected of prudent and well prepared defense attorneys. Instead they seemed
to function as malicious prosecutors

Afterwards I dismissed the ACLU from the proceedings before petitioning the next
court. I retained Mr. Luther C. West of Baltimore, Maryland. He in turn, did
not write or file a brief with the CMA, nor did he add to his argument before
CMA the issue of ineffectiveness of counsel ( U.S. v. Strickland ). He did,
however; acknowledge and confirm my complaint, but he " took the money and ran".
he did not stand ready, willing, and able to assert "ineffectiveness of counsel"
as an additional , supplemental error. And last, but not least, is Major Ambrose
HQ USAF/JAJD who is representing me before the U.S. Supreme Court. I made
mention to him of the additional error and he disagreed in his legal opinion
and said that the issue was without merit.

EXHIBIT A

-2-

However; I contend that the ACLU attorneys and the State of Colorado made merchandise of my hide in order to sabotage my appeal. One look at the documents filed with the courts and it would not take a strained interpretation to conclude collusion, and systematically bad faith on behalf of my ACLU attorneys.

I truly believe that ineffectiveness of counsel should be added to the supplemental errors, and given due consideration. This would be in the intrest of justice and the constitutional rights of this Appellant. I am not guilty of the accused crime. I maintain my innocense and will continue to fight to vindicat my name from this shameful ordeal. I would appreciate any assistance you offer in your judicial capacity to help me obtain due process of law. I also need your professional assistance to include " ineffectiveness of counsel" as a supplemental error in my petition to the U.S. Supreme Court.

Most Sincerely,

Brian K. Garries, # 70795
Drawer A
Ft. Leavenworth, Ks.

30 sept 1986

Brian K. Garries, #70795
Drawer A
Ft. Leavenworth, K.S. 66027-7140

To: The Honorable Judge Advocate General

Please permit me to inform you of my case, U.S v. GARRIES, which is pending
review before the United States Supreme Court. I was tried and convicted by a
General Courts- Martial on 17 March 1983 under Article 118 of the Uniform
Code of Military Justice (UCMJ). This trial was convened at the U.S. Air Force
Academy, Colorado Springs, Colorado. However; the American Civil Liberties
Union ( ACLU ) had expressed a desire to represent me on the Appellant process.

I agreed to allow the ACLU to represent me in the Appellant proceedinds because
of their reputation and they had the necessary resources available to do an
effective job to vindicate me from such a hideous crime. It is my contention,
however; that the ACLU attorney's in Denver, Colorado, Richard M. Borchers,
Sander Karp, and William Reynard deliberately did not exercise competence
during my Appellant proceedings andtheir legal ethics and integrity should be
called into question.

The reason for this valid complaint is that during their representation before the
Air Force Court of Military Review ( A.F.C.M.R. ), they produced cunningly
devised documents ( Affidavits, Memos for Record, etc. ) to undermine my chances
of a retrial or reversal and produced an apperance of guilt before the A.F.C.M.R.
to affirm and sustain my conviction.

Such collusion between the State of Colorado and these attorneys created prejudice
before the court and is in violation of my constitutional rights guaranteed under
the six th amendment. While it is true I desired ACLU representation, the documents
filed with the court implied guilt on my part. It is my contention that their
erroreous representation was so seriously flawed, that it rendered my Appellant
proceedings a farce and a mockery of justice. It was not the Appellant defense
expected of prudent and well prepared defense attorneys. Instead they seemed
to function as malicious prosecutors

Afterwards I dismissed the ACLU from the proceedings before petitioning the next
court. I retained Mr. Luther C. West of Baltimore, Maryland. He in turn, did
not write or file a brief with the CMA,.nor did he add to his argument before
CMA the issue of ineffectiveness of counsel ( U.S. v. Strickland ). He did,
however; acknowledge and confirm my complaint, but he " took the money and ran".
he did not stand ready, willing, and able to assert "ineffectiveness of counsel"
as an additional , supplemental error. And Iast, but not least, is Major Ambrose
HQ USAF/JAJD, who is representing me before the U.S. Supreme Court. I made
mention to him of the additional error and he disagreed in his legal opinion
and said that the issuse was without merit.

-2-

However; I contend that the ACLU attorneys and the State of Colorado made merchandise of my hide in order to sabotage my appeal. One look at the documents filed with the courts and it would not take a strained interpretation to conclude collusion, and systematically bad faith on behalf of my ACLU attorneys.

I truly believe that ineffectiveness of counsel should be added to the supplemental errors, and given due consideration. This would be in the intrest of justice and the constitutional rights of this Appellant. I am not guilty of the accused crime. I maintain my innocense and will continue to fight to vindicat my name from this shameful ordeal. I would appreciate any assistance you offer in your judicial capacity to help me obtain due process of law. I also need your professional assistance to include " ineffectiveness of counsel" as a supplemental error in my petition to the U.S. Supreme Court.


Most Sincerely,

Brian K. Garries, # 70795
Drawer A
Ft. Leavenworth, Ks.



**DEPARTMENT OF THE AIR FORCE**
HEADQUARTERS UNITED STATES AIR FORCE
WASHINGTON, D.C.    20332-6128

14 OCT 1986

Inmate Brian K. Garries, No. 70795
Drawer A
Ft Leavenworth, KS 66027-7140

Dear Inmate Garries

Your letters to The Judge Advocate General and the Secretary of
the Air Force have been referred to me for response.  You
indicated in your letter that you requested your present appellate
counsel, Major Ambrose, to include an issue of ineffective
assistance of appellate counsel in your petition for a writ of
certiorari to the U.S. Supreme Court.  Major Ambrose declined to
do so because he felt the issue was without merit.

Major Ambrose is not required to raise this issue.  Under the
current case law, a defense counsel assigned to prosecute appeals
from criminal convictions has no constitutional duty to raise
every possible issue requested by a defendant, if the counsel, as
a matter of professional judgment, decides not to present those
points.  Any further questions should be addressed to your
appellate counsel.

I hope you find this informative.

Sincerely

RICHARD D. S. DIXON, III, Colonel, USAF
Chief, Military Justice Division
Office of The Judge Advocate General

June 13th 82

### Affadavit

Today i Michael Joseph Kirk Jr. talked to Jeff Pribanz about the Brian Garvies case. When Detective Brown approch me i did give him the run around about the case. The reasons for this was because i was arrested twice while i was in Daytona Beach and was hasselled by the State of Colorado. I have had many raw deals since the first time is was contacted about this case. I have also found out on my on that Chad hypoldt has lied on me. and about knowing anything about Garvies case to save his own neck. This is the first time anyone has really wanted to listen to me. I also believe that some of the information that i obtained from Detective Brown shouldn't have been discussed with me. Such as telling and leading me on about Brian second wife, how she was beat up and had broken bones. As far as my testimony in court was i told the truth, for as believeing it i couldn't say i'm not a judge of people. In no way was i forced to give this statments or promised any thing.

Michael Joseph Kirk Jr.

Jun 13, 198[3?]

Betty E Heller

NOTARY PUBLIC STATE OF

Affadavit

6-22-83  Time: 10:15

I David S. Lee "4-18-63" am writting this statement from my knowledge about the Brian Garries case, which is nothing. but as far as Michael Kirks testimony goes. He had told me that the D.A. was putting preassure on him to ~~bit~~ testify or go to prison, so he made up his story from newspaper clipping + from conversations we had in E/paso county jail.

"We" being Michael Kirk Brian Garries + myself David S. Lee

I was not cohurst into this statement + no promises were made to me.

signed:- David Scott Lee

State of Colorado)
County of Fremont) SS

Subscribed and sworn to me by David Scott Lee on June 22, 1983.

Richmond A. Murray, Notary Public

my commission expires on August 31, 1985

## A F F I D A V I T

I, Walter Kent Moeller, being duly sworn, depose and state as follows:

1. That I am a police officer with the City of Aurora, Colorado and am certified by the State of Colorado as a law enforcement officer.

2. That I am trained in crime scene investigation and blood splatter patterns.

3. That I examined per the request of Richard Borchers and Jeffrey Pubanz copies of photographs of the Garries' home done by the El Paso County Sheriff's Office, police reports on the case, autopsy report by the El Paso County Coroner, and FBI Reports and prepared the attached report.

4. That I have been qualified as an expert witness in court.

5. That based upon all information that I reviewed, I can only conclude that Camille Garries was not killed in her home and the blood splatters in the basement of the Garries home are not consistent with the injuries suffered by the deceased.

_Walter Kent Moeller_
WALTER KENT MOELLER

STATE OF COLORADO )
                  ) ss:
County of         )

SUBSCRIBED AND SWORN to before me this 27 day of May, 1984 by Walter Kent Moeller.

_____
Notary Public
Address: 1660 B annick # 114
Denve, CO 80221

My commission expires: 8/20/87

State of Colorado
County of Fremont

Subscribed and sworn to me

EXHIBIT D

*Attorney*

*Richard Borchers*

<u>M E M O R A N D U M</u>

October 18, 1983

TO:      Mr. Jeff Pubanz

FROM:    Walter Kent Moeller

SUBJECT:  Homicide - C.S.P.D. Case #81-2203


After a careful analysis of photographs and other verbal information submitted by Mr. Pubanz, I have reached the following conclusion.

The only area in the home on which any blood was found was the last four lower steps of the basement stairway and on the basement floor, left side of the staircase.

Some type of beating occurred directly in front of the staircase in the basement. The reason for this belief is that there are medium velocity blood splatters on the front edges of the bottom four stairs. Also, there is directionality to some of the blood splatters which would help locate the point of origin if accurate measurments could be made. However, I was advised the steps in question have most likely been destroyed.

If the victim had been beaten at this location, she would have had to be stooped over or on her hands and knees.

I do not believe the victim was killed in the home, but killed at another location and then transported to the place where her body was found. The reasons for this conclusion are that the victim had severe head wounds which would probably bleed severely and five stab wounds to the chest area. None of the photographs of the home show that any type of struggle occurred in any of the rooms.

From the F.B.I. report on the analysis of evidence, it was found that blood stains on the stairs were human but could not be grouped. Also, the stains that were on the basement floor were not blood. The only location from which they could identify the victim's blood was on a piece of cardboard that was supposed to have come from the trunk of the victim's car.

From the Coroner's report page 1A. He states that the victim died either late on Saturday evening or early on Sunday morning. Mr. Pubanz advises the suspect telephoned his superiors on Saturday to state his wife was missing. One of the superiors went to suspects house and, after going through it, found nothing suspicious. Suspect spent Saturday night at the home of the supervisor. This superior also advised suspect not to report his wife missing until after 72 hours had elapsed. Suspect reported to the Colorado Springs Police Dept. on the following Monday afternoon that his wife was missing.

*W.K. Moeller*

IN THE UNITED STATES AIR FORCE COURT OF
MILITARY REVIEW

PHARAOH OJORE NKOSI            )
a.k.a  BRIAN K. GARRIES        )
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                    )
                               )
            (Petitioner)       )
                               )        A.F.C.M.R.
                               )        Misc Dkt No. _____
        -v-                    )
                               )
                               )
GREGORY LOWE (Commandant),     )
USAF, AND THE UNITED STATES    )
OF AMERICA                     )
            (Respondents)      )
_____)

## PETITION FOR EXTRAORDINARY RELIEF IN THE NATURE OF ERROR CORAM NOBIS

The petitioner hereby prays for an order directing the respondents to:

1.  REVIEW THE PETITIONER'S ISSUES NOT PRESENTED DURING PAST APPEALS PROCEDURES IN THE COURT OF MILITARY REVIEW BY THE PETITIONER'S COUNSEL.

2.  REVIEW THE PETITIONER'S CASE FOR FACTUAL AND LEGAL SUFFICIENCY AS REQUIRED BY THE UNIFORM CODE OF MILITARY JUSTICE AND THE CONSTITUTION.

3.  GRANT PETITIONER HIS REQUEST FOR EXTRAORDINARY RELIEF AND APPOINT AN ATTORNEY UPON ACCEPTANCE.

## HISTORY OF THE CASE

On March 3, 4, 5, 6, 14, 15, 16, and 17, 1983, petitioner was tried by a General Court - Martial, Military Judge and Jurors at USAF Academy, Colorado. Inconsistent with his pleas, petitioner was found guilty of one

2

specification   of   premeditated   murder;   in   violation   of
Article 118, Uniform Code of Military Justice on   March   17,
1983, petitioner   was   sentenced to a Dishonorable Discharge
from the service, Confinement for  Life, Forfeiture  of   all
Pay . and  Allowances,  and  Reduction  to the grade of Airman
Basic (E-1).  The Convening Authority approved the sentence.
Petitioner's case was reviewed by The  AIR  FORCE  Court  of
Military  Review  (AFCMR).  At the AFCMR, petitioner through
appellate defense civilian and Military  counsels;  Messars,
William  Reynard, Sander  Karp  and  David  Miller of Denver
Colorado, Colonel Leo L. Sergi, and Major Conrad  C. Baldwin
Jr.., alleged the Military Judge erred in thirteen areas.

After  considering  the  entire record, the AFCMR found
the findings and  sentence  as  approved  by  the  Convening
Authority  correct  in Law and Fact and affirmed the finding
of guilty and the sentence.

Petitioner then filed a petition for  Grant  of  Review
with  the Court of Military Appeals  (CMA), and a supplement
to the  petition  followed.  Petitioner, again  through  new
appellate  defense  counsel:  Mr. Luther  C. West, Esq., and
military counsel  Col  Leo  L. Sergi, and Major  Conrad  C.
Baldwin Jr, asserted that the judge erred in thirteen areas.

On  March  26, 1986  the  CMA  granted the petitioner's
petition for  a  grant  of  review  and  affirmed  the  AFCMR
decision on August 20. 1986.

3

## STATEMENT OF FACTS

On June 1981, the petitioner was arrested for murder, the evidence and information in regards to the offense was that the petitioner had allegedly killed his wife by stabbing and beating her to death. The petitioner pled not guilty to the offense and maintains his innocence. The petitioner was found guilty and sentenced on March 17, 1983 by a General Court - Martial. The petitioner's Court-Martial was void and unconstitutional due to the reversible errors committed before and during the Court - Martial's proceedings.


## ISSUES PRESENTED

### I

**WHETHER PETITIONER'S ORIGINAL APPELLATE DEFENSE COUNSEL WAS INEFFECTIVE BY FILING BEFORE THE APPELLATE COURT DOCUMENTS AND AFFIDAVIT'S THAT CORROBORATE THE GOVERNMENT'S CASE AGAINST THE PETITIONER**


### II

**WHETHER THE PETITIONER'S NEW APPELLATE DEFENSE COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE INEFFECTIVE COUNSEL ON THE PREVIOUS APPELLATE DEFENSE COUNSEL WHILE ON DIRECT APPEAL**

**WHETHER THE PETITIONER WAS DENIED EFFECTIVE COUNSEL THROUGHOUT HIS ENTIRE APPELLATE PROCESS**

4

## RELIEF SOUGHT

Wherefore, the petitioner hereby prays for an order, directing the respondents to review the petitioner's case for factual and legal sufficiency and appoint an attorney. The petitioner also hereby request that the following relief be sought from this honorable court to set aside the the findings of guilty and the sentence and its specifications, and a hearing be conducted to render the petitioner relief of his void and unconstitutional sentence.

## REASON FOR GRANTING THE WRIT

Due the petitioner's lack of knowledge of the law, the petitioner recently requested documents pertaining to his case from the Air Force Legal Services, See Attch: 2 Letters, and has found newly discovered evidence and issues within his case that are constitutional violations of the petitioner's rights to a fair trial and review before the appellate courts, and thus has deprived the petitioner of his life, liberty and property wrongfully. Petitioner believes justice will be best served if petitioner writ is granted, and relief given for these unconstitutional errors.

## JURISDICTIONAL STATEMENT

1. Petitioner is presently under the jurisdictional authority of the United States Air Force, and is confined at

5

the United States Disciplinary Barracks, Ft Leavenworth KS.,
Petitioner has exhausted all appellate procedures for the
review of the court - martial conviction except as implied
herein.  Petitioner has newly discovered evidence and issues
that his lawyer failed to present before the Court of Review
and the petitioner is requesting that these issues be
addressed because of their unconstitutional statue,
depriving the petitioner of his life, liberty, and property.

2.    Petitioner further request that pursuant to Art. 70
UCMJ The Judge Advocate General appoint appellate defense
counsel to represent him in any proceedings concerning this
petition before either the Air Force Court of Military
Review or Military Court of Appeals or both.

3.    Justice will best served if the military proceed over
the petitioner's issues and request for extraordinary relief
of his void and unconstitutional sentence.  The petitioner
will proceed to petition to the civilian courts if the
military decides to waiver their jurisdiction and exhaust
their remedies to relieve the petitioner of his
unconstitutional sentence and confinement.

See:
2 Attch Ltrs

Respectfully Submitted

PHARAOH OJORE NKOSI
Box # 70795
Drawer A
Ft Leavenworth, KS
66027 - 7140

UNITED STATES AIR FORCE COURT OF MILITARY REVIEW

| | |
|---|---|
| PHARAOH OJORE NKOSI, a.k.a. | ) PETITION FOR EXTRAORDINARY |
| BRIAN K. GARRIES, | ) RELIEF |
| 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, | ) |
|                   Petitioner | ) |
| | ) Misc. Dkt. No. 94-03 |
| | ) |
|          v. | ) |
| | ) Panel No. 2 |
| Colonel | ) |
| GREGORY LOWE and | ) |
| THE UNITED STATES OF AMERICA, | ) 29 April 1994 |
|            Respondent | |

Before

HEIMBURG, PEARSON, and SCHREIER
Appellate Military Judges

PER CURIAM:

    Petitioner seeks extraordinary relief in the form of a writ of error coram nobis ordering that his general court-martial conviction for premeditated murder be reviewed anew under Article 66, UCMJ, because his appellate counsel violated his right to effective representation. He previously exhausted his appeal rights. *United States v. Garries*, 19 M.J. 845 (A.F.C.M.R. 1985), *aff'd.*, 22 M.J. 288 (C.M.A.), *cert. denied*, 479 U.S. 985 (1986). This Court's opinion also denied his petition for a new trial. 19 M.J. at 866-69. He is presently incarcerated at the United States Disciplinary Barracks, Fort Leavenworth, Kansas. Although this Court has the authority to act on this petition, *see* 28 U.S.C. § 1651(a) (1988), *see also Tillman v. United States*, 32 M.J. 962 (A.C.M.R. 1991), we find that the requested relief is unwarranted.

    Petitioner argues that his first set of appellate counsel, who filed his appeal with this Court, provided ineffective representation when they moved to file certain affidavits and documents in support of his petition for new trial. Petitioner claims these submissions "create[d] a cloud of guilt and culpability" that tended to prove the prosecution's case against him. He also argues his second set of appellate counsel, who filed his appeal with the Court of Military Appeals, were ineffective because they didn't assert that his first set of appellate counsel were ineffective when they submitted the affidavits and documents.

    A meritorious claim of ineffectiveness of counsel must establish that (1) the factual allegations are true, (2) the counsel's performance fell below an objective standard of reasonableness, and (3) there is a reasonable probability that, but for the counsel's deficient performance, the result would have been different. *Strickland v.*

*Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *United States v. Tharpe*, 38 M.J. 8 (C.M.A. 1993); *United States v. Polk*, 32 M.J. 150 (C.M.A. 1991); *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987).

We accept petitioner's factual allegations as true—his first set of appellate counsel did file the questioned documents and his second set of appellate counsel did not assert ineffective assistance of appellate counsel. However, we find the performance of counsel in both cases was reasonable. Petitioner's first set of appellate counsel made an able effort to establish grounds for a new trial and raise doubt about critical trial testimony by filing the documents in question. Comparing the content of the documents with the evidence contained in the record of trial, we find counsel acted reasonably and appropriately. Having found the submission of the documents to have been reasonable, we clearly believe the failure of petitioner's second set of counsel to assert ineffective assistance of appellate counsel was clearly within an objective standard of reasonableness. Accordingly, the petition is

DENIED.



OFFICIAL

Alvin J. Stribling
Technical Sergeant, USAF
Chief Court Administrator, AFCMR

2

Misc. Dkt. 94-03

IN THE UNITED STATES COURT OF MILITARY APPEALS

| | |
|---|---|
| PHARAOH OJORE NKOSI<br>a.k.a. BRIAN K. GARRIES<br>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<br>(Petitioner)<br><br>-v-<br><br>GREGORY LOWE (Commandant),<br>USAF, AND THE UNITED STATES<br>OF AMERICA<br>(Respondents) | PETITION FOR EXTRAORDINARY<br>RELIEF<br><br>A.F.C.M.R.<br>Misc Dkt No. 94-03<br><br>C.M.A. Dkt. No. _____ |

**BRIEF IN SUPPORT OF PETITION FOR EXTRAORDINARY RELIEF**

**HISTORY OF THE CASE**

On March 3, 4, 5, 6, 14, 15, 16, and 17, 1983, petitioner was tried by a General Court - Martial, Military Judge and Jurors at USAF Academy, Colorado. Inconsistent with his pleas, petitioner was found guilty of one specification of premeditated murder; in violation of Article 118, Uniform Code of Military Justice on March 17, 1983, petitioner was sentenced to a Dishonorable Discharge from the service, Confinement for Life, Forfeiture of all Pay and Allowances, and Reduction to the grade of Airman Basic (E-1). The Convening Authority approved the sentence. Petitioner's case was reviewed by The AIR FORCE Court of Military Review (AFCMR). At the AFCMR, petitioner through appellate defense civilian and Military counsels; Messars, William Reynard, Sander Karp and David Miller of Denver

2

Colorado, Colonel Leo L. Sergi, and Major Conrad  C. Baldwin Jr.., alleged the Military Judge erred in thirteen areas.

After  considering  the  entire record, the AFCMR found the findings and  sentence  as  approved  by  the  Convening Authority  correct  in Law and Fact and affirmed the finding of guilty and the sentence.

Petitioner then filed a petition for  Grant  of  Review with  the Court of Military Appeals  (CMA), and a supplement to the  petition  followed.  Petitioner, again  through  new appellate defense counsel:  Mr. Luther  C. West, Esq., and military counsel  Col  Leo  L. Sergi, and  Major  Conrad  C. Baldwin Jr, asserted that the judge erred in thirteen areas.

On  March  26, 1986  the  CMA  granted the petitioner's petition for a  grant  of  review  and  affirmed  the  AFCMR decision on August 20. 1986.

## STATEMENT OF FACTS

On  June  1981, the  petitioner was  arrested for murder, the evidence and information in regards to the  offense  was that  the  petitioner  had  allegedly  killed  his  wife  by stabbing and beating her to death.  The petitioner pled  not guilty  to  the  offense  and  maintains his innocence.  The petitioner was found guilty and sentenced on March  17, 1983 by  a  General  Court - Martial.  The  petitioner's Court-

3

Martial was void and unconstitutional due to the  reversible
errors  committed  before  and  during the Court - Martial's
proceedings.

## ISSUES PRESENTED

### I

WHETHER PETITIONER'S ORIGINAL APPELLATE DEFENSE COUNSEL
WAS INEFFECTIVE BY FILING BEFORE THE APPELLATE
COURT DOCUMENTS AND AFFIDAVIT'S THAT
CORROBORATE THE GOVERNMENT'S
CASE AGAINST THE PETITIONER

### II

WHETHER THE PETITIONER'S NEW APPELLATE DEFENSE
COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE
INEFFECTIVE COUNSEL ON THE PREVIOUS
APPELLATE DEFENSE COUNSEL
WHILE ON DIRECT APPEAL

WHETHER THE PETITIONER WAS DENIED EFFECTIVE
COUNSEL THROUGHOUT HIS ENTIRE
APPELLATE PROCESS

## ARGUMENT

### I

WHETHER THE PETITIONER'S ORIGINAL APPELLATE DEFENSE COUNSEL
WAS INEFFECTIVE  BY FILING BEFORE THE APPELLATE
COURT DOCUMENTS AND AFFIDAVITS THAT
CORROBORATES THE GOVERNMENT'S
CASE AGAINST THE PETITIONER

Of all the rights that a accused person has, the  right
to  be  represented by counsel is by far the most pervasive,
for it affects his ability to assert any other- rights  that
he   may   have. Schaefer Federalism  and  State  Criminal
Procedure, 70 Harv. L. Rev. 1, 8 (1956).

4

No truer words can be spoken for the petitioner than those of justice Walter V. Schaefer. There is no practical or tactical reasoning that appellate defense counsels Messers , William Reynard, Sander Karp and David Miller of Denver Colorado along with military counsels Col. Leo L. Sergi, and Major Conrad C. Baldwin Jr.., should have filed these affidavits and documents that tend to create a cloud of guilt and culpability before the Appellate Court, and thus proves the Government's case against the petitioner; thereby denying the petitioner's rights to Due Process under the Fifth Amendment. This Court should find that petitioner's civilian appellate defense counsels rendered ineffective assistance of counsel.

The law in this area is crystal clear where counsels representation of a client is deficient to the point that it was unreasonable under prevailing professional norms, and the deficient performance prejudiced the client. A prima facia case of ineffective assistance of counsel exists. Strickland v. Washington, 446 U.S. 668 (1984); United States v. Scott, 24 M.J. 186 (CMA 1987). The right to effective assistance of counsel extends to all phases of courts- martial, and where counsel has been effective on the merits, he or she may be nonetheless ineffective on appeal. United States v. Thomas, 33 M.J. 768 (N.M.C.M.R. 1991).; "Ineffective representation by counsel at trial or appellate level is never waived".

5

Indeed it is beyond Cavil that individuals have a right to effective assistance of counsel through their first Appeal of right. <u>Evitts v. Lucey</u>, 105 S.ct. 830 (1985).

In support of petitioner's claim of ineffective Appellate Defense Counsel, petitioner will demonstrate, and provide affidavits and documents filed before the Appellate Court and that the Appellate Defense Counsels performances was so deficient that they were not functioning as counsel guaranteed by the Sixth Amendment and that their deficient performance prejudiced the petitioner's Appellate process (Appellate Defense).

**"thus a court [m]ay affirm only such findings of guilty and the sentence...as it finds correct in Law and Fact...[I]t may weigh the evidence, judge the <u>credibility</u> of <u>witnesses</u>, and determine controverted questions of fact." UCMJ Art. 66 (c), 10 U.S.C. 866 (c) 1988.**

1. See Document Attch. #3., Post trial Affidavit dated 13 June 1982 (Michael J. Kirk Jr.). The Government chief witness at trial. Appellate Defense counsel obtained this post trial Affidavit from Mr. Kirk and filed it before the Air Force Court of Military Review (A.F.C.M.R), as an alleged recantation of testimony by Mr. Kirk.

What this affidavit does is not a recantation of testimony at trial but rather an affirmation of Mr. Kirk's testimony at trial and a corroboration of the Government's case against the petitioner.

6

[A]s far as my testimony in court was I told the truth."

Also within Mr. Kirk's affidavit he asserts that detective Brown made mention of the accused second (2) wife being battered with broken bones

> "Detective Brown shouldn't have been discussed with me.
> Such as letting and leading me on about Brian's second
> wife, how she was beat up and had broken bones."

These comments made by Mr. Kirk within his affidavit about Det. Brown leading him on about the petitioner's second wife gives him credibility and integrity before the court and corroborates the Government's case against the petitioner.

Such comments and revelations are not only destructive to the petitioner's best interest, it made the petitioner to appear as a "bad" person, linking the petitioner to the use of "force and demise" against his first wife and the battering of his second wife. This affidavit filed by appellate defense counsel in his behalf creates a more involved (evil) picture of the petitioner as a "habitual" spouse batterer, which thereafter; would provide the Military Appellate Judges a less difficult task of being convinced of the petitioner's guilt as it relates to the case before it, and possible serious uncharged misconduct for matters not properly before the court. See <u>U.S.    V.</u> <u>Newberry</u>, 35 M.J. 777 (A.C.M.R) 1992., also see <u>U.S.    V.</u>

7

Rivas, 3 M.J. 282 (CMA 1977).

This affidavit undermines the adversarial process, the fairness of the petitioner's Appellate process and the reliability of the findings. Appellate Defense counsels filing of this affidavit is unreasonable under prevailing the professional norms, see U.S. V. Scott, 24 M.J. 186 (CMA 1987), Appellate defense counsels is obligated to advocate best evidence favorable to the accused, see U.S. V. Weikel, 24 M.J. 666 (A.F.C.M.R 1987), also see U.S. V. Palenius, 2 M.J. 86 (CMA 1977), Defense counsels role and by extension, appellate defense counsels role is to militate against affirmance of findings of guilt or sentence as approved by convening authority.

This affidavit provided the military appellate Judges a less than easy task to rule against the petitioner, See decision and order., U.S. V. Garries, ACM 24158., pgs 31, 32. Appellate defense counsels failure to provide evidence to mitigate the findings of guilt and the Government's case against the petitioner results in disloyalty. See U.S. V. King, 13 M.J. 863.,(N.M.C.M.R. 1982).

2. See attch. Document # 4., Petitioner now turns to document # 4, Post trial affidavit dated 22 June 1983 (David Scott Lee), filed with the Air Force Court of Military Review by Appellate Defense Counsel on petitioner's behalf.

8

Appellate defense counsel marshalls evidence in favor of the government's theory and corroborates Mr. Kirk's trial testimony and Post- trial affidavit, thus relieving the government of the "burden of proof." The damning contents of the affidavit is follows:

**"We being Michael Kirk, Brian Garries and myself David S. Lee."**

This statement within the affidavit does not refute or challenge Mr. Kirk's credibility but gives the impression that the petitioner did in fact confide in Mr. Kirk and David S. Lee. Such filing of an affidavit lends credibility to the government's case and to Mr. Kirk the government's chief witness. See <u>U.S.  V.  Cronic</u>, 104  S.ct. 2039 (1984). Appellate defense counsel fails to subject prosecutions case to a meaningful adversarial testing. See <u>U.S.  V.  Lucas</u>, 1 C.M.R. 19, 22 (1951) S(c) P(4)

**That the burden of proof to establish the guilt of the accused beyond a reasonable doubt is upon the government."**

Such an affidavit corroborates the government's case against the petitioner filed by Appellate Defense Counsel provided that A.F.C.M.R. Judges with the necessary picture of culpability of the petitioner and the credibility of the government's case and thus rule in favor of the Government Appellate Counsel. See decision and order <u>U.S. V. Garries</u>, A.C.M. 24158, pg 30. Appellate Defense Counsels conduct

9

must not be antagonistic to the best interest of client.,
See U.S. V. Davis, 2 M.J. 819, A.C.M.R. 1976.


Appellate defense counsel must advocate his/ her
clients case with competence expected of fallible attorney's
and not abandon client, to provide incriminating evidence/
affidavits that corroborate the Government's case, thus
relieving the government of the "Burden of Proof Beyond A
Reasonable Doubt"., See U.S. V. Berri, 30 M.J. 1169 (C.G.
C.M.R 1990).


3. See attch Document # 2., Petitioner now turns to
document # 2 Post - Trial affidavit dated May 1984, (Walter
Kent Moeller, appellate defense counsels blood splatter
pattern expert). This affidavit was filed before the
(A.F.C.M.R.) on behalf of petitioner by appellate defense
counsel.

**para. 5 states: "That based upon all information that I
reviewed, I can only conclude that Camille Garries was not
killed in her home and the blood splatters in the basement
of the Garries home are not consistent with the injuries
suffered by the deceased."**

This expert opinion advocates the cause of the
petitioner and supports the petitioner's best interest as is
the role of competent appellate defense counsel. The
paradox is that petitioner's Appellate Defense Counsel also
files behind (Affidavit) document # 2., (memorandum)...See
attch. document # 2a from the same blood splatter expert
(Walter Kent Moeller, dated 18 Oct. 1983), this memorandum

10

contains a highly inflammatory analysis that **dooms** the petitioner in a cloud of **guilt** and **culpability**, thus prejudices petitioner's Appellate defense and **sabotages** the petitioner appellate rights to a fair appellate process.

The government's theory and case against the petitioner is corroborated on a very important point in the memorandum concerning blood splatter patterns, which states:

**"Some type of beating occurred directly in front of the staircase in the basement. The reason for this belief is that there are medium velocity blood splatters on the front edges of the bottom four stairs."**

Appellate Defense Counsels decision to file this memorandum on behalf of petitioner before the Court of Review A.F.C.M.R. terminated petitioner's Appellate Defense counsel from role of advocate to being a party of the government and critically undermined the adversarial process, the fairness of the appellate defense and the reliability of the findings., See <u>U.S. V. Swanson</u>, 943 F.2d 1070, 1074 (9th Cir. 1991). Additionally this memorandum supplies credibility and substance to the testimony of Det. Green at petitioner's trial (Det. Green Government's Blood Splatter Expert)., and is referred to in the Appellate Government's brief as proof of the petitioner's guilt.

This error of Appellate Defense Counsel is egregious

11

and prejudicial. See., <u>Murray V. Carrier</u>, 106 S.ct. 2639
(1986). also see <u>Green V. Arn</u>, 809 F.2d 1257 (6th Cir
1987). This unprofessional error upset the adversarial
balance between Defense and Prosecution in favor of the
Government. See., <u>Kimmelman V. Morrison</u>, 106 S.ct. 2574
(1986)., also see decision and order <u>U.S. V. Garries</u>
A.C.M. 24158 pgs., 28,29.


Petitioner asserts that Appellate Defense Counsels
errors and incompetence denied petitioner a full and fair
hearing before the Court of Military Review (A.F.C.M.R.),
and that justice would be served by providing a thorough
Appellate Review before the Court of Military Review with
the assistance of capable Appellate Defense Counsel ., See
<u>Tillman V. U.S.</u>, 32 M.J. 962 A.C.M.R. 1991.


II

<u>**WHETHER THE PETITIONER'S NEW APPELLATE DEFENSE
COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE
INEFFECTIVE COUNSEL ON PREVIOUS
APPELLATE DEFENSE COUNSEL
WHILE ON DIRECT APPEAL**</u>

<u>**WHETHER PETITIONER WAS DENIED EFFECTIVE
COUNSEL THROUGHOUT HIS ENTIRE
APPELLATE PROCESS**</u>

This court should find new appellate defense counsel
rendered ineffective assistance of Appellate Counsel.
Petitioner's new appellate defense counsel did not suggest
reconsideration nor asked for this Court or The Court of
Military Appeals to consider petitioner's previous Appellate

12

Defense Counsels ineffective assistance.

Petitioner's new appellate defense counsel (Luther C. West, Esq., Colonel Leo L. Sergi, and Major Conrad C. Baldwin Jr.) failed to ask The Court of Military Review or The Military Court of Appeals to remand the case to the Court of Military Review so that the petitioner could have a full and fair hearing in his first appeal. Petitioner is entitled to effective assistance through all phases of court - martial and appeals. See U.S. V. Scott, 24 M.J. 186 C.M.A. 1987. New Appellate Defense Counsel (Luther C. West) knew of the previous appellate defense counsels damaging affidavit's / documents against the petitioner and also previous Appellate Defense Counsels questionable **role** and **ethics** before the A.F.C.M.R. and new appellate defense counsel should have raised this significant question of law as a advocate with undivided loyalty to the petitioner. See Anders V. California, denied 87 S.ct. 1396 (1967).

After reviewing petitioner's case new appellate defense counsel failed to raise this significant question of law, and a reasonable decision would have led new appellate defense counsel to ask that the Court of Military Appeals remand the issues back to the lower court A.F.C.M.R. so that the petitioner can receive a full and fair hearing, thus petitioner is entitled to effective assistance on appeal. See., U.S. V. Kelly, 32 M.J. 813 (N.M.C.M.R. 1991).

13

Under Art. 27 of the Uniform Code of Military Justice, 10 U.S.C. § 827 and the sixth Amendment of the constitution a military accused is guaranteed the effective assistance of counsel., U.S. V. Scott, 24 M.J. 186 C.M.A. (1987). In Scott, the Court of Military Appeals applied the test set forth by the Supreme Court in Strickland V. Washington, 466, U.S. 668, 104 S.ct. 2052, 80 L.Ed. 674 (1984).

Strickland, requires that in order for an accused to successfully argue that he was denied effective assistance of counsel, he must show that his counsel was incompetent and that this incompetence prejudiced the defense of the accused. Scott, 24 M.J. at 188, citing Strickland, 466 U.S. at 687, 104 S.ct. at 2063.

The effective representation requirement does not end once the trial itself is over; it continues on to the sentencing, post- trial and Appellate phases. U.S. V. Dorsey, 30 M.J. 1156, 159 (A.C.M.R. 1990).

" The failure to receive a full review before this court with the effective assistance of Appellate defense counsel deprive[s] the petitioner of a substantial right." See U.S. V. Tillman, 32 M.J. 962, 966 (A.C.M.R. 1991).

Appellate defense counsels held to the same standards as trial defense counsel; that is that " Appellate defense counsel must act with the competence reasonably expected of an attorney rendering such legal services." See U.S. V.

14

Hullum, 15 M.J. 261 (C.M.A. 1983).

If appellate defense counsel does not act reasonably competent, then the accused has essentially had no appellate defense counsel to aid him in his appeal process and has been denied an important constitutional right.

The Court of Military Appeals set out the basic guidelines for appellate defense counsel in __U.S. v.__ Grostefon, 12 M.J. 431 C.M.A. (1982). In Grostefon , the court stated that **"[A]ppellate defense counsel has the obligation to assign all arguable issues, but he is not required to raise issues that in his professional opinion, are frivolous, but he is after all an advocate, and if he errs it should be on the side of raising the issue."** Id . at **435.**

Petitioner submits that new Appellate defense counsel were ineffective and violated the mandates of Grostefon in failing to raise the issues of previous Appellate defense counsels ineffective assistance on direct appeal. New appellate defense counsels failure to raise this issue in the appellate process; thereby new appellate defense counsels (Luther C. West, Colonel Leo. L. Sergi, and Major Conrad C. Baldwin ) severely prejudiced the petitioners case. Upon reviewing of the previous appellate defense counsels record before the Court of Military Review and

15

elements of the case, new appellate defense counsels should have been able to identify the inconsistency of previous appellate defense counsels ( Messers, William Reynard, Sander Karp, and David Miller of Denver Colorado and military counsel Col. Leo L. Sergi and Major Conrad C. Baldwin Jr.) actions, and should have alerted new appellate defense counsel **(Luther C. West) to the issues raised in this writ.**

By not identifying the issue at all new appellate defense counsel **(Luther C. West)** failed to provide effective assistance of appellate counsel to petitioner.

In conclusion, the petitioner finally submits that ineffectiveness of appellate defense counsel can be remedied by new appellate review provided by the Air Force Court of Military Review and Court of Military Appeals., See <u>U.S. V. Tillman</u> 32 M.J. 962 (A.C.M.R. 1991). To ensure that the petitioner receives a full and fair hearing before the Court and that justice will better served.

**Therefore;** Petitioner prays that this Honorable Court grant this writ.

Respectfully Submitted

PHARAOH O. NKOSI
Box # 70795
Drawer A.
Ft. Leavenworth, Ks
66027 - 7140

## INDEX TO BRIEF

| | Page |
|---|---|
| Statement of the case | 1 |
| Statement of the Facts | 2 |
| Issues Presented and Arguments | 3 |

I

WHETHER PETITIONER'S ORIGINAL APPELLATE DEFENSE COUNSEL
WAS INEFFECTIVE BY FILING BEFORE THE APPELLATE
COURT DOCUMENTS AND AFFIDAVIT'S THAT
CORROBORATE THE GOVERNMENT'S
CASE AGAINST THE PETITIONER

11

II

WHETHER THE PETITIONER'S NEW APPELLATE DEFENSE
COUNSEL WAS INEFFECTIVE FOR FAILING TO RAISE
INEFFECTIVE COUNSEL ON THE PREVIOUS
APPELLATE DEFENSE COUNSEL
WHILE ON DIRECT APPEAL

WHETHER THE PETITIONER WAS DENIED EFFECTIVE
COUNSEL THROUGHOUT HIS ENTIRE
APPELLATE PROCESS

Appendix A        Document # 3 Affidavit, dated 13 June
                  1982 (Michael J. Kirk)

Appendix B        Document # 4  Affidavit dated 22 June
                  1983.  (David Scott Lee)

Appendix C        Document # 2  Affidavit dated May 1984
                  (Walter Kent Moeller) Blood Splatter
                  Expert for Appellate Defense.

Appendix D        Document # 2a Memorandum dated 18 Oct
                  1983  (Walter Kent Moeller) Blood
                  Splatter Expert for Appellate Defense

Appendix E        Decision and Order U.S.  V. Garries
                  A.C.M  24158 pgs 28 thru 32.

June 13<u>th</u> 82

## Affadavit

Today i Michael joseph Kirk jr. talked to jeff Pilkanz about the Brain Garvies case. Before when Detective Brown approch me i did give him the run around about the case. The reasons for this was because i was arrested twice while i was in Daytona Beach and was hasselled by the State of Colorado. I have had many raw deals since the first time is was contacted about this case. I have also found out on my on that Chad hipoldt has lied on me. and about knowing anything about Garvies case to save his own neck. This is the first time anyone has really wanted to listen to me. I also believe that some of the information that i obtained from Detective Brown shouldn't have been discussed with me. Such as telling and leading me on about Brain second wife. how she was beat up and had broken bones. As far as my testimony in court was i told the truth, for as believing it i couldn't say i'm not a judge of people. In no way was i forced to give this statments or promised any thing.

Michael joseph Kirk jr.

June 13, 198_

Betty P. Heller

Affadavit

6-22-83   Time: 10:15

I David S. Lee "4-18-63" Im writting this statement from my knowledge about the Brian Garries case, which is nothing. but Is far As Michael Kirks Testimony goes. He had told me that the D.A. was putting preassure on him to testify or go to prison, so he made up his story from newspaper clipping & from conversations we had in El paso county jail.

"We" being Michael Kirk Brian Garries & myself David S. Lee

I was not cohurst into this statement & no promises were made to me.

signed:- David Scott Lee

State of Colorado)
County of Fremont)   SS

Subscribed and sworn to me by David Scott Lee on June 22, 1983.

Richmond A. Murray, Notary Public

my commission expires on August 31, 1985

## A F F I D A V I T

I, Walter Kent Moeller, being duly sworn, depose and state as follows:

1. That I am a police officer with the City of Aurora, Colorado and am certified by the State of Colorado as a law enforcement officer.

2. That I am trained in crime scene investigation and blood splatter patterns.

3. That I examined per the request of Richard Borchers and Jeffrey Pubanz copies of photographs of the Garries' home done by the El Paso County Sheriff's Office, police reports on the case, autopsy report by the El Paso County Coroner, and FBI Reports and prepared the attached report.

4. That I have been qualified as an expert witness in court.

5. That based upon all information that I reviewed, I can only conclude that Camille Garries was not killed in her home and the blood splatters in the basement of the Garries home are not consistent with the injuries suffered by the deceased.

_Walter Kent Moeller_
WALTER KENT MOELLER

STATE OF COLORADO )
                  ) ss:
County of         )

SUBSCRIBED AND SWORN to before me this 21 day of May, 1984 by Walter Kent Moeller.

Notary Public
Address: 1690 Bannock # 114
Denver, CO 80221

My commission expires: 9/20/85

ATTORNEY:

_ichard Burcherg_

M E M O R A N D U M

October 18, 1983

TO:      Mr. Jeff Pubanz

FROM:    Walter Kent Moeller

SUBJECT:  Homicide - C.S.P.D. Case #81-2203

After a careful analysis of photographs and other verbal information submitted by Mr. Pubanz, I have reached the following conclusion.

The only area in the home on which any blood was found was the last four lower steps of the basement stairway and on the basement floor, left side of the staircase.

Some type of beating occurred directly in front of the staircase in the basement. The reason for this belief is that there are medium velocity blood splatters on the front edges of the bottom four stairs. Also, there is directionality to some of the blood splatters which would help locate the point of origin if accurate measurments could be made. However, I was advised the steps in question have most likely been destroyed.

If the victim had been beaten at this location, she would have had to be stooped over or on her hands and knees.

I do not believe the victim was killed in the home, but killed at another location and then transported to the place where her body was found. The reasons for this conclusion are that the victim had severe head wounds which would probably bleed severely and five stab wounds to the chest area. None of the photographs of the home show that any type of struggle occurred in any of the rooms.

From the F.B.I. report on the analysis of evidence, it was found that blood stains on the stairs were human but could not be grouped. Also, the stains that were on the basement floor were not blood. The only location from which they could identify the victim's blood was on a piece of cardboard that was supposed to have come from the trunk of the victim's car.

From the Coroner's report page 1A. He states that the victim died either late on Saturday evening or early on Sunday morning. Mr. Pubanz advises the suspect telephoned his superiors on Saturday to state his wife was missing. One of the superiors went to suspects house and, after going through it, found nothing suspicious. Suspect spent Saturday night at the home of the supervisor. This superior also advised suspect not to report his wife missing until after 72 hours had elapsed. Suspect reported to the Colorado Springs Police Dept. on the following Monday afternoon that his wife was missing.

_Wm K Mueller._

that the blood spatter patterns on the stairs are inconsistent
with the injuries suffered by the victim and that she did not die
in the basement; that infrared photographs taken of the walls of
the accused's quarters were negative for the presence of blood and
that this exculpatory evidence was not disclosed to the defense;
that financial records reflected that the victim controlled the
family finances and that she had purchased furniture in May 1981
for delivery to her and the accused's quarters on the installa-
tion; that "tissue, skin and blood" under the fingernails of the
victim indicate that she fought with her assailant, and that a
physical examination of the accused did not reveal any scratches,
etc.; and, information reflecting wrongdoing by Kirk other than
that disclosed in open court.

The test for whether a new trial will be granted on the basis
of newly discovered evidence is well settled:  The evidence must
be newly discovered since trial, and it is not such that it would
have been discovered by the petitioner at the time of trial in the
exercise of due diligence; and, if considered by a court-martial
in the light of all other pertinent evidence, it would probably
produce a substantially more favorable result for the accused.
M.C.M., para. 109d(2).  The petitioner must also affirmatively
show that an injustice resulted from the findings.  United States
v. Bacon, 12 M.J. 489 (1982), and cases cited therein.  The burden
on the petitioner is heavier than that normally borne during
appellate review, and motions for new trial on the grounds of
newly discovered evidence are not regarded with favor.  Such
motions should be granted only with great caution.  United States
v. Bacon, supra.

Applying these criteria to the instant case, the accused
fails to carry his burden.  First, the traffic citation was
clearly discoverable prior to trial.  However, even if it were
truly newly discovered, it would not produce a substantially more
favorable result.  By arguing the likelihood that the victim owned
more than one pair of glasses, trial defense counsel vigorously
attacked the significance of the victim's glasses being found in
the master bedroom.  Additionally, trial defense counsel used the
presence of the glasses to support a rather weak theory of the
victim being abducted from the home.  Nonetheless, in view of
practically all of the victim's possessions being in the home,
including her purse and military identification card, we are con-
vinced that this "new" evidence would not have changed the result
at trial.

As regards the opinion of the blood spatter expert, again
this is not new evidence.  His opinions were known to trial
defense counsel.  Additionally, as pointed out in appellate
government's brief, his opinion concurs with Detective Green on a
very important point.  His memorandum to appellate defense counsel
states, "Some type of beating occurred directly in front of the

staircase in the basement." He also agreed that the point of origin could be discerned from the spatters' directionality with accurate measurements. Under these circumstances, one cannot fault trial defense counsel for not calling him as a witness. We are convinced that this opinion would not produce a more favorable result.

We must reach the same conclusion on the infrared photographs. Trial defense counsel had access to all investigative files, etc., so, unless the taking of the photographs was not recorded, they should have known of their existence. However, this point need not detain us, for trial defense counsel used other evidence at trial to demonstrate that there was no evidence that the accused had painted over potentially incriminating blood stains. He did so via the testimony of Lt Duke who was in the home the afternoon of 13 June 1981. Lt Duke testified that he did not observe or smell any paint in the upstairs area of the accused's home. Additionally, during the cross-examination of Detective Green, trial defense counsel established that there were methods of detecting blood stains which had been painted over. This was stressed during closing argument when trial defense counsel reminded the members that a suspicious stain on an upstairs wall turned out to be a beverage similar to KoolAid.

As indicated in Part XI, supra, trial defense counsel were aware of the financial records and the autopsy report; therefore, these items are not newly discovered evidence. As for the autopsy report, it does not state that skin, etc., was taken from the victim. The report states that fingernail clippings were taken from the victim for laboratory analysis. The laboratory report reflects human blood stains on the fingernails, but not skin or tissue. Thus, this is not evidence of a struggle.

The last item of new evidence is additional evidence of wrongful conduct by Kirk. One of the offenses apparently occurred during the accused's trial, but the others were clearly discoverable prior to trial. At any rate, this "new" evidence pertaining to Kirk's credibility is not likely to have produced a more favorable result. The factfinders were clearly aware of Kirk's unsavory character, and we must infer that they weighed his testimony with great caution.

We conclude that the accused has not met his burden of producing new evidence which would produce a more favorable result. United Stats v. Bacon, supra.

The accused also requests a new trial on the ground that fraud was perpetrated upon the court-martial via perjured testimony. He avers that Mrs. Brice and Kirk presented false testimony. We will first review the assertion on Mrs. Brice.

During her preliminary questions, Mrs. Brice stated her occupation was registered nurse. Appellate defense counsel has presented documentation which they contend shows that Mrs. Brice lied when she stated she was a registered nurse. The specific documentation is simply a private investigator's report that there is no record of Mrs. Brice ever being licensed in Colorado as a registered nurse.

Even where a fraud is perpetrated upon the trial court, it must have had a substantial contributing effect upon the findings in order to merit a new trial. M.C.M., para. 109d(3); United States v. Bacon, supra. Applying this standard, the allegation falls far short. First, the absence of a license in Colorado does not preclude her being licensed in another state. Second, it could be that Mrs. Brice had worked as a registered nurse at an earlier point of her life. Third, and most important, her occupation was irrelevant to her testimony, for she did not give medical testimony. Her testimony was that she was a friend and confidant of the victim; ergo, if the victim had been suffering from nosebleeds the victim would have told her. Their friendship would have motivated the revelation, not her occupation. At any rate, there was expert testimony that the blood stains/spatters were inconsistent with blood dripping from above, i.e, a nosebleed. Therefore, even if Mrs. Brice is not, or never was, a registered nurse, that part of her testimony had no substantial contributing effect on the result.

The main fraud alleged is that Kirk fabricated his testimony at trial and that he recanted his testimony after trial. As support, appellate defense counsel has submitted affidavits from a fellow inmate, David Lee, and Kirk.

Lee claims that the district attorney was putting pressure on Kirk to testify, so Kirk made up his testimony from newspaper clippings and from conversations "We had in El Paso County jail." Lee defines "we" as "We being Michael Kirk Brian Garries and myself David S. Lee."

Since Kirk does not recant his testimony, Lee's claim to the contrary presents a factual issue. We resolve the issue against the accused. Lee claims to have no knowledge of the accused's case, but yet he says that Kirk got his information, in part, from conversations with the accused at which he, Lee, was present. Secondly, although the conversations did not necessarily reveal incriminating statements, Lee's affidavit corroborates Kirk's claim that they discussed the accused's case. The only issue in dispute is the content of those conversations.

ACM 24158

Contrary to appellate defense counsel's assertion, Kirk does not recant his testimony. The relevant portion of Kirk's post-trial affidavit reads as follows:

> [A]s far as my testimony in court was I told the truth, far as believing it I couldn't say I'm not a judge of people.

It requires a strained interpretation to conclude that the quoted portion equates to a recantation of testimony. All Kirk is saying, albeit inarticulately, is that he has no opinion as to whether the accused's revelations to him were true, for that was for others to decide; however, he testified truthfully and accurately <u>as to what the accused told him</u>.

In their affidavit, trial defense counsel stated they had reason to believe that another inmate, Leipoldt, could corroborate Kirk in addition to knowing of independent admissions by the accused. We are also mindful of the affidavit of the private investigator, Mr. Pubanz, who claims that Leipoldt disputed this assertion. Under these circumstances, the accused has not met his burden of showing that a fraud was perpetrated on the court via perjured testimony. <u>United States v. Bacon, supra</u>; <u>United States v. Morris</u>, 13 M.J. 666 (A.F.C.M.R.), <u>pet. denied</u>, 14 M.J. 446 (1982).

Additionally, the argument that Kirk had fabricated his testimony from newspaper clippings was fully presented to the factfinders for their consideration.

The last items of claimed fraud are that the investigation was slanted and fabricated to build a case against the accused rather than the actual perpetrator; and, that the court-martial was not presented with all of the available evidence. The latter contention is tied in with the assertion that trial defense counsel committed a fraud upon the court "in providing no defense to the charge." The evidence presented in support is an affidavit by a private investigator that Detective Green told him that he was concerned that the Sheriff's Department's investigation had not been done properly and was not thorough enough; that he was pulled out of the accused's residence prematurely; and, that certain witnesses had been pressured to testify.

Detective Green's first alleged comment on the appropriateness of the investigation is subject to several interpretations. He may have been referring to the fact that following better procedures would have prevented the Colorado courts from suppressing the blood stain evidence. At any rate, he testified to the contrary on cross-examination. In response to trial defense counsel's questions, he stated that his investigation of the residence had been thorough, and that it was equally advantageous to exonerate a suspect, for they could then focus their efforts in other

ACM 24158

directions. Further, this information is similar to a recantation of testimony, and we must view it with disfavor. <u>United States v. Morris, supra.</u> Finally, it did not require much deductive reasoning to conclude that Kirk was persuaded to testify. His own testimony suggested as much.

As for the assertion that trial defense counsel perpetrated a fraud upon the court via ineptness, it does not merit comment.

XIV

Accordingly, the findings of guilty and the sentence are

AFFIRMED.

XV

The Petition for New Trial having been fully considered, it is hereby

DENIED.

FORAY, Senior Judge, and O'HAIR, Judge, concur.



OFFICIAL:

CHARLES L. WILLE
Captain, USAF
Chief Commissioner

ACM 24158

Certificate of Filing and Service

I certify that a copy of this pleading, postage prepaid
was mailed to the following on the _____ of _____1994.

AIR FORCE COURT OF MILITARY REVIEW
APPELLATE DIVISION
BLDG. 5683, BOLLING AFB
WASHINGTON, D.C. 20332 - 6128

PHARAOH OJORE NKOSI

Box # 70795
DRAWER A.
Ft. Leavenworth, Ks
66027 - 7140

UNITED STATES COURT OF MILITARY APPEALS

Pharaoh O.                          )   USCMA Misc. Dkt. No. 94-8109/AF
NKOSI (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)                 )
                    Appellant       )
                                    )
           v.                       )          O R D E R
                                    )
Gregory Lowe (Commandant),          )
USAF, and the United States         )
of America                          )
                    Appellees       )


On consideration of the writ appeal petition for review of the United States Air Force Court of Military Review's denial of a petition for extraordinary relief, it is, by the Court, this 9th day of June, 1994,

ORDERED:

That said petition is hereby denied.



For the Court,

/s/ John A. Cutts, III
Deputy Clerk of the Court

13 JUN 94 15 AF/JAJM

cc:  The Judge Advocate General of the Air Force
     Appellate Defense Counsel
     Appellate Government Counsel
     Appellant